## HENNESSY *v.* RICHARDSON DRUG COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 203.   Argued March 12, 1903.—Decided March 23, 1903.

An averment in a bill that the complainants are "all of Cognac in France, and citizens of the Republic of France," is sufficient to give the Circuit Court of the United States for Nebraska jurisdiction in a controversy where the defendants are citizens of Nebraska. No averment of alienage is necessary.

Where the Circuit Court dismisses a bill on the ground that it has no jurisdiction because diversity of citizenship did not appear, and certifies this question of jurisdiction, that is the only question for the consideration of this court on an appeal under the first subdivision of section 5 of the Judiciary Act of March 3, 1891, and if jurisdiction is found to exist the case will be remanded to be heard on the merits, notwithstanding the Circuit Court also expressed the opinion that the bill was without equity.

THE case is stated in the opinion of the court.

*Mr. Adolph L. Pincoffs* for appellants, with whom *Mr. James L. Hopkins* and *Mr. Richard S. Horton* were on the brief.

I. The Constitution and the Judiciary Act provide that the Federal courts shall have jurisdiction as to controversies where the necessary jurisdictional amount is involved "between citizens of a State and foreign States, citizens, or subjects thereof." The complaint alleges that complainants are all citizens of the Republic of France which clearly and indubitably complies

with the statutory provision. It would not have been sufficient to allege that the complainants are aliens but the allegations must be to the effect, as was done here, that they are either citizens or subjects of a foreign State. *Wilson* v. *City Bank*, 3 Sumner, 422. The cases cited by the learned judge below in no way indicate that this allegation is insufficient. *Stuart* v. *Easton*, 156 U. S. 46, distinguished as holding that the fact of alienage must affirmatively appear and that the allegation that a party is a citizen of the city of London is not sufficient, because, as was suggested by Lacombe, J., in the case of *Betancourt* v. *M. R. F. Life Assn.*, 101 Fed. Rep. 305, London is not a free and independent country,—not a State within the meaning of that word as used in the Constitution and Judiciary Act. That case, therefore, is in no way an authority in support of the proposition that the allegation that the party is a citizen of the Republic of France, which is a free and sovereign State, is insufficient to show jurisdiction where the defendant, as in this case, is a citizen of a State of the Union.

The case of *Rondot* v. *Township of Rogers*, 79 Fed. Rep. 676, held that an allegation that the complainant was a resident of Ontario, Canada, and a citizen of the Dominion of Canada and of the Empire of Great Britain was insufficient.

It is unnecessary to discuss whether that case was properly decided and did not extend the doctrine laid down by this court beyond its original limits. It might be said in support of it that it is improper to allege that a person who resides in a monarchical government is a citizen but that the proper allegation would be that he is a subject of the monarch to whom he owes allegiance. In our case, as France has a republican form of government, the allegation that he is a citizen of such government, is sufficient.

The distinction here insisted upon between the words "citizen" and "subject" is recognized by this court in the case of *United States* v. *Wong Kim Ark*, 169 U. S. 649, 662, 664, which cites with approval *United States* v. *Rhodes*, 1 Abb. U. S. 28, in which it is said "all persons born in the allegiance of the King are natural born subjects and all persons born in the allegiance of the United States are natural born

citizens." Also citing *State* v. *Manuel*, 4 Dev. & Bat. 20, 24, 26 : " The term *citizen* in our law is precisely analagous to the term *subject* in the common law and the change of phraseology has entirely resulted from the change of government. The sovereignty has been transposed from one man to the collective body of the people and a subject of the King is now a citizen the State."

Judge McPherson interprets the words " citizens or subjects " as if they read " citizens and subjects." While it is true that sometimes the word " or " may be changed to " and " in interpreting a statute, this is only so where the word " and " as used would lead to absurd results and would be clearly contrary to the intention of the legislature.· Endlich on Statutes, sec. 305.

In this case no such necessity exists, as the meaning of the statute is perfectly clear and we venture to say has never before, as to this point, been doubted.

II. If it is held by this court that the allegation of the citizenship of complainants was sufficient, it is clear that the burden of proving such allegation to be untrue is on the defendant. This is so even if the objection to the jurisdiction has been properly taken by the defendant. *Adams* v. *Shirk*, 117 Fed. Rep. 801, and cases cited.

In the case at bar there was no plea to the jurisdiction or plea in abatement, nor was the objection to the jurisdiction raised in the answer. No evidence contradicting the allegation as to the citizenship of appellants was introduced by defendants. The court acted on its own motion. In order to justify this action it must appear from the record that the suit did not involve a controversy of which the court could properly take cognizance. Act of March 3, 1875, 18 Stat. 472; *Morris* v. *Gilmer*, 129 U. S. 315 ; *Anderson* v. *Watt*, 138 U. S. 694.

The only evidence in this record bearing on the subject is the statement by the appellants (page 11) that they reside in Cognac, France. Even if the burden were on the complainants to prove the correctness of that allegation as to their citizenship, proof of their residence in France would be *prima facie* sufficient. *Shelton* v. *Tiffin*, 6 How. 163 ; *Express Company* v.

*Kountze Bros.*, 8 Wall. 342; *Collins* v. *City of Ashland*, 112 Fed. Rep. 175.

III. The court erred in assuming to pass on the merits after it had determined the question that it had no jurisdiction and its attempt to do so must be treated as a mere nullity. While we disclaim any intention to argue the merits of this case before this court, we wish to say that it is difficult to see how the court below could have come to any other conclusion but that complainants were entitled to at least an injunction where it finds that the complainants have proved their trade mark beyond question; and that the defendants have sold goods bearing counterfeit labels, even if such sales were made in good faith. *Saxlehner* v. *Siegel Cooper Co.*, 179 U. S. 42.

In the amended decree the court, while dismissing the bill for lack of the necessary jurisdictional allegations, " further " dismisses it on the merits. And in the certificate, while certifying that it has passed on the question of jurisdiction, it states that the merits have also been passed upon. The court had no power both on general principles and in virtue of the express provisions of the statute from which it derives its jurisdiction, to pass on the merits after it had decided that it had no jurisdiction. Its attempt to do so must be treated as an absolute nullity. *Taylor* v. *Mutual Reserve Fund Life Association*, 97 Virginia, 60; *Howard* v. *Kentucky & Louisville Mutual Ins. Co.*, 52 Kentucky, 282; *Stough* v. *C. & N. W. R. R. Co.*, 71 Iowa, 641; *Gray* v. *Dean*, 136 Massachusetts, 128; *Wheeler & Wilson Mfg. Co.* v. *Whitcomb*, 62 New Hampshire, 411.

This court has consistently followed the principle here contended for. *Minnesota* v. *Hitchcock*, 185 U. S. 373; *Metcalf* v. *City of Watertown*, 128 U. S. 586.

It has repeatedly reversed the decrees of the lower court dismissing bills upon the merits in cases where such court had no jurisdiction and has directed that the bill should be dismissed without prejudice. *Barney* v. *Baltimore City*, 6 Wall. 280; *Kendig* v. *Dean*, 97 U. S. 423; *Parker* v. *Ormsby*, 141 U. S. 81, 83; *Lake County Commissioners* v. *Dudley*, 173 U. S. 243.

The provision of the statute in virtue of which the court be-

low acted fully recognizes this principle. The question of the jurisdiction was not raised by the defendants and the sufficiency of the jurisdictional allegations was not challenged by them. The court acted of its own motion. The statute giving it such power expressly says that if in " any suit commenced in the Circuit Court . .. . it shall appear to the satisfaction of said Circuit Court at any time after such suit has been brought or removed thereto that such suit does not really and substantially involve the dispute or controversy properly within the jurisdiction of said Circuit Court . . . the said Circuit Court *shall proceed no further but shall dismiss the suit.*" Act of March 3, 1875, chap. 137, sec. 5.

This provision has by numerous adjudications by this court been held a salutary one and that it is the duty of the Circuit Court to exercise their power under it in proper cases. *Williams* v. *Nottawa,* 104 U. S. 209 ; *Excelsior Wooden Pipe Co.* v. *Pacific Bridge Co.,* 185 U. S. 282. It has further been held that the action of the Circuit Court is reviewable by this court under the act of March 3, 1891, chap. 517, sec. 5. *Wetmore* v. *Rymer,* 169 U. S. 115; *Huntington* v. *Laidley,* 176 U. S. 668 ; *United States* v. *John,* 155 U. S. 109.

Nor can any life be injected into such attempted finding on the merits by the decision of this court that the court below had jurisdiction. The purpose of the statute, as we argued, is that the question of jurisdiction, if its existence is denied by the court below, should be settled before the merits are touched. The complainants, when they appealed on the jurisdictional question to this court, as was their duty and right, could not, even if they had wished to, have appealed to the Circuit Court of Appeals on the merits, because the statute does not permit of two appeals in the same case. *McLish* v. *Roff,* 141 U. S. 661. They had a right to treat such decision as a nullity. If any effect were given to it because the court below improperly denied its own jurisdiction, it would follow that although they followed the only course open to them, they might be deprived by the lapse of time of the right given to them by statute to have the decision on the merits reviewed by the Circuit Court of Appeals.

IV. On the point suggested on the argument, whether it was sufficient to allege that the value of the trade mark sought to be protected exceeded $2000, or whether there should have been an allegation that the amount of the damage done by the acts of the defendants exceeded that sum, the following cases and text writers sustain the contention of the appellants, and pass upon this exact point. *Symonds* v. *Greene*, 28 Fed. Rep. 834; *Hennessy* v. *Herrman*, 89 Fed. Rep. 669; Foster on Federal Practice, § 16, p. 51. See also Hopkins on Unfair Trade, p. 216.

While this court is not bound by any of these decisions, it is submitted that they are based on correct principles and are supported by the decisions of this court. They are merely an application of the general rule, approved by this court, that in an action for an injunction jurisdiction is determined by the value of the right to be protected and by the values of the object to be gained. *Mississippi & Missouri R. R. Co.* v. *Ward*, 2 Black, 485; *Market Co.* v. *Hoffmann*, 101 U. S. 112. See also *Humes* v. *City of Ft. Smith*, 93 Fed. Rep. 862; *Delaware & Lackawanna R. R. Co.* v. *Frank*, 110 Fed. Rep. 689.

It appears from the pleadings in this case that the right to the trade mark itself was put in issue by the defendants, and that the right of the complainants to enjoy and protect their trade mark, if they have any—without which it would be valueless—is challenged by charging them with the most atrocious frauds.

It is clear, therefore, that the matter in dispute, the value of which determines the jurisdiction of the court, is the trade mark itself and the right to its enjoyment. Even, therefore, if, in a case such as was suggested on the argument, where only one bottle was sold, there might be some doubt whether an allegation that the trade mark was worth more than $2000 would be sufficient, if, on the coming in of the answer, it appeared that there was no denial of the right of complainants to their trade mark, but that the only question to be litigated was whether or not defendant had made such sale, such doubt cannot exist in this case, where the defendant challenges the right of complainants to their trade mark and their right to enjoy

and protect it, without which it would be valueless; where the protection of such right is the object of the suit and where the injury and damage to complainants, were the contention of defendants to prevail, would be the loss of such trade mark, the value of which is alleged to exceed $2000.

*Mr. Charles F. Tuttle* for appellee.

The certificate contains matters other than questions of jurisdiction. The so-called certificate does not contain a single, definite, clear, specific question of jurisdiction.

It is so broad as to require a search of the record by this court to ascertain what particular question of jurisdiction was involved.

This court will not make such a search, nor follow counsel in such a search.

If this court will make such a search no particular, specific and definite question of jurisdiction will be found.

No mere suggestion that the jurisdiction of the court was in issue will answer.

Proceedings to this court were here dismissed for lack of a proper presentation of a single, precise, specific question of jurisdiction in the following cases and they are favorably decisive of all the above contentions: *Maynard* v. *Hecht*, 151 U. S. 324; *Moran* v. *Hagerman*, 151 U. S. 329; *In re Lehigh Co.*, 156 U. S. 322; *Sheilds* v. *Colman*, 157 U. S. 168; *Interior Construction Co.* v. *Gibney*, 160 U. S. 217; *Van Wagenen* v. *Sewall*, 160 U. S. 369; *Chappell* v. *United States*, 160 U. S. 499; *Davis* v. *Geissler*, 162 U. S. 290; *Huntington* v. *Laidley*, 176 U. S. 668–676.

The first point made in the brief of appellants is that " the Circuit Court erred in holding that the jurisdictional facts as to the complainants' citizenship were not properly alleged."

If such a question arose on the trial it is not properly presented in this court.

However, if a search of the record be made, it will be found that no such question was the real and substantial ground of the decree and the assignment for that reason should not be considered.

If, however, the assignment be considered it may be observed

that the jurisdictional facts as to the alienage of complainants and their alleged partnership are not properly pleaded. *Stuart* v. *Easton*, 156 U. S. 46

The second point made in the brief of appellants that "the court erred in holding that it was incumbent upon the complainants to prove the allegation of citizenship," like the first point, is not properly presented for determination by this court. It does not appear that the point was of *controlling* force in the trial court and should not be considered. But if considered it will be found untenable, for the reason that, under the Code of Nebraska, the answer takes the place of all pleas, whether general or special, in abatement or to the merits and the general denial of appellee's answer put in issue appellants' jurisdictional averments. *Roberts* v. *Lewis*, 144 U. S. 653.

The third assignment of error in appellants' brief that the court erred in passing upon the merits of the case is not within the field of this appeal. It does not involve any question touching the jurisdiction of the Circuit Court. The assignment is one not contemplated by the act granting the right of appeal from Circuit Courts direct to this court.

The evidence before the trial court is not preserved in proper form and is not before this court in any form.

The errors, if any, were without prejudice.

The decree rests upon an independent ground, broad enough to maintain it, in which no question of jurisdiction was involved.

The decree is grounded upon the merits of the cause. The evidence is not before this court. The opinion not being properly authenticated is no part of the record. No complaint is made that on the evidence the bill should not have been dismissed. The merits of the controversy appearing to have been fully heard and determined against the appellants the decree therefore rests upon questions of fact and principles of law independent of and not involving a determination of jurisdictional questions.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This was a bill alleging that complainants were "all of Cog-

nac in France, and citizens of the Republic of France," and that defendant was a citizen of Nebraska, and a resident of the judicial district thereof ; that complainants owned and employed a certain trade mark for Hennessy brandy, (which they produced, bottled and sold,) of a value exceeding two thousand dollars, which trade mark had been properly registered in the Patent Office under the act of Congress of March 3; 1881 ; and that defendant was selling an imitation " Hennessy brandy," using facsimiles of complainants' trade name, devices and labels. Injunction, profits, and damages were prayed for.

The case was brought to issue, heard on pleadings and proofs, and dismissed, it being held that the court had no jurisdiction because " complainants' citizenship or alienage is not alleged, as required ; " and also that the case was with defendant on the merits.

The decree stated among other things : " And the court finds that neither the bill, nor the bill as amended nor the evidence shows the citizenship of complainants, or any of them so as to confer jurisdiction upon this court. And the court further finds with and for the defendants and against the complainants on the evidence, and that the bill as amended is without equity. And for both and all reasons hereinbefore recited," the bill was dismissed.

The court then granted a certificate in these words : "It is certified that the question of jurisdiction referred to in the opinion was passed upon—but that the case was also determined upon its merits. The question of jurisdiction set forth in the opinion filed herein together with the question of the merits of the case is hereby certified to the Supreme Court, all of which are shown by the decree and the opinion."

An appeal was taken directly to this court under the first of the classes of cases enumerated in section five of the judiciary act of March 3, 1891, and we are shut up to the consideration of the question of jurisdiction alone. We do not understand that the amount in controversy was treated below as having any bearing in respect of that question. The act of March 3, 1881, provides for jurisdiction " without regard to the amount in controversy," and the averment here was that the

value of the trade mark exceeded two thousand dollars. :The point, however, was not relied on, and we confine ourselves to the question of jurisdiction as dependent on citizenship.

By the Constitution, the judicial power of the United States extends to controversies between citizens of a State, "and foreign States, citizens or subjects." And by statute, Circuit Courts of the United States have original cognizance of all suits of a civil nature, at common law or in equity, in which there is "a controversy between citizens of a State and foreign States, citizens, or subjects." 25 Stat. 433, c. 866.

In *Stuart* v. *Easton*, 156 U. S. 46, it was held that by the description of plaintiff as "a citizen of London, England," the fact that he was a subject of the British Crown was not made affirmatively to appear as required; but, in the case at bar, complainants described themselves as "all of Cognac in France, and citizens of the Republic of France," and this was sufficient.

No averment of alienage was necessary. It is true that by section 6 of the judiciary act of March 3, 1891, the judgments and decrees of the Circuit Courts of Appeals were made final in cases, among others, in which the jurisdiction was dependent entirely on the opposite parties to the suit or controversy being citizens of different States, or "aliens and citizens of the United States." But the word "aliens" as there used embraces subjects or citizens of foreign countries, and not merely persons resident in this country, who owe allegiance to another. And the language of the Constitution and of the act determining the jurisdiction of the Circuit Courts is explicit.

In *Chisholm* v. *Georgia*, 2 Dallas, 419, 456, Mr. Justice Wilson said that under the Constitution of the United States "there are citizens, but no subjects. 'Citizens of the United States.' 'Citizens of another State.' 'Citizens of different States.' 'A State or citizen thereof.' The term, subject, occurs, indeed, once in the instrument; but to mark the contrast strongly, the epithet 'foreign' is prefixed."

The Supreme Court of North Carolina in *State* v. *Manuel*, 4 Dev. & Bat. 20, 26, (quoted in *United States* v. *Wong Kim Ark*, 169 U. S. 649,) said: "The term 'citizen,' as understood in our law, is precisely analogous to the term 'subject' in the common

law, and the change of phrase has entirely resulted from the change of government. The sovereignty has been transferred from one man to the collective body of-the people; and he who before was a 'subject of the King' is now 'a citizen of the State.'"

In that view the people of France are properly described as citizens of that Republic.

As complainants were citizens of a foreign State and defendant was a citizen of Nebraska, as affirmatively appeared from the pleadings, no issue of fact arising in that regard, the Circuit Court had jurisdiction.

*Decree reversed and cause remanded for rehearing on the merits.*

HENNESSY *v.* MOISE, No. 204. HENNESSY *v.* MAY, No. 205.

MR. CHIEF JUSTICE FULLER. These cases must take the same course as that just decided, and the same decrees will be entered.